UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

GERALD D. TAYLOR,

        Petitioner,

        v.                                       Case No. 03-C-1420

GARY R. McCAUGHTRY,

        Respondent.

DECISION AND ORDER DENYING GERALD TAYLOR'S PETITION FOR WRIT OF HABEAS CORPUS, AND DISMISSING CASE WITH PREJUDICE

        Petitioner Gerald Taylor challenges his judgment of conviction on two counts of first degree sexual assault of a child. Taylor entered a plea of no contest in exchange for the state's sentencing recommendation of a fifteen-year sentence on the first count and a stayed twenty-five year sentence on the second count. Notwithstanding the recommendation, the sentencing court imposed two consecutive sixty-year terms. Taylor filed a direct appeal arguing that the trial court erred in exercising its sentencing discretion. The Wisconsin Court of Appeals affirmed, and the Wisconsin Supreme Court denied Taylor's petition for review on the same claim. After he filed his petition for writ of habeas corpus in federal court, Taylor was permitted to return to state court to exhaust his claims that the plea was invalid, that there was a potential conflict of interest, judicial bias, ineffective assistance of trial and appellate counsel, and breach of the plea agreement. The Wisconsin Court of Appeals rejected Taylor's arguments and the Wisconsin Supreme Court denied review. Now, for the reasons set forth below, Taylor's petition for writ of habeas corpus will be denied.

In reviewing a petition for writ of habeas corpus, federal courts are confined by the standards set forth in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d). A federal court cannot grant habeas corpus relief unless the state court's decision was "contrary to" or "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

A decision is "contrary to" federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent and arrives at a result opposite" that reached by the Supreme Court. *Malinowski v. Smith*, 2007 WL 4165925 at *5 (7th Cir. 2007) (citing *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A state court decision is an "unreasonable application" of clearly established federal law when the court either "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.,* (citing *Williams*, at 407).

In his petition, Taylor raises a number of arguments relating his guilty plea. Taylor asserts that he was "[P]romised by trial counsel that if he plead 'Guilty' to the alleged crime he would make a deal with the State that would guarantee him 3-4 Year at maximum in prison." He further submits that counsel insisted on the plea bargain and asked the state

to change its offer from a sentence to be determined to the court to a maximum sentence of fifteen years on count one and a term of probation on count two. According to Taylor, counsel represented that the plea "could not be voided by the courts." Along the same lines, Taylor asserts that counsel changed the plea from guilty to no contest at the last minute and that counsel told him to answer yes to all of the questions asked by the court to ensure that things went smoothly.

Because these claims could have been raised on direct appeal, the Wisconsin Court of Appeals held that they were procedurally barred by *State v. Escalona-Naranjo*, 185 Wis.2d 168, 517 N.W.2d 157 (1994). Noting that Taylor had offered ineffective assistance of counsel as the reason for failing to raise this issue earlier, the Court of Appeals rejected these claims finding that Taylor could not satisfy the standards of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Specifically, the Court of Appeals found that Taylor's claims were nothing more than conclusory allegations not supported by the record:

> For example, the record reflects that during the plea colloquy Taylor understood the trial court was not bound to follow the sentence recommendations made by the State, he told the court he was not pressured or coerced and there is no indication to support Taylor's claims to the contrary after the fact. He simply makes the assertions. This is insufficient to satisfy his burden of proving that counsel's actions constituted deficient performance.

(Respondent's Answer, Ex. M, p. 4)

In this case, there is no question that the Wisconsin Court of Appeals applied the proper law. Hence, the inquiry is limited to the unreasonable application part of the test. In *Brown v. Payton*, 544 U.S. 133, 143, 125 S. Ct. 1432, 161 L. Ed.2d 334 (2005), the Supreme Court held that "[e]ven on the assumption that [the state court's] conclusion was

incorrect, it was not unreasonable, and is therefore just the type of decision that AEDPA shields on habeas review."

During the plea hearing, Milwaukee County Circuit Court Judge John J. DiMotto questioned Taylor about his understanding of what the district attorney would recommend. Taylor answered that it had been explained to him. (Respondent's Answer, Ex. S, p. 6) Judge DiMotto advised that regardless of the type of plea, Taylor was facing "up to 80 years in prison." (*Id.*, p. 7) Taylor responded that he understood each count and the maximum term of 40 years on each count. (*Id.*, p. 8) Under oath, Taylor stated that his signature was on the bottom of the No Contest Plea Questionnaire and Waiver of Rights form. (*Id.*) Further, Taylor indicated that he understood everything on the form, that he had read the form, that he understood the nature of the plea, that he understood the government's burden of proof, and that his lawyer had gone over the form with him before he signed it. (*Id.*, pp. 10-11)

Significantly, Taylor testified that he understood that the court was not bound by any negotiation or anything recommended to the court by the district attorney, defense counsel, Taylor, or anyone else at sentencing. (*Id.*, p. 14) Judge DiMotto noted that he had the authority to sentence Taylor to the maximum penalty provided by law and could make the sentences run consecutively for a term of eighty years. (*Id.*, pp. 14-15) Taylor denied that anyone, including his lawyer, had made threats or forced him to enter the no contest plea. (*Id.*) Upon inquiry, he responded that he was entering the plea, freely, voluntarily, intelligently, and without the interference of any medicine, illegal drugs or alcohol. (*Id.*)

At the time of sentencing, Taylor had changed his mind with respect to the sentencing option available under the plea agreement. Initially, he opted for the recommendation that would permit the district attorney to recommend a sentence but would

4

leave to the court the specific period of incarceration. (Respondent's Answer, Ex. T, p. 2) Defense counsel indicated at sentencing that Taylor had changed his mind "given the dynamics of the situation" and would prefer the option that would permit the district attorney to recommend a period of incarceration of fifteen years on Count One and twenty-five years stayed on Count Two with a term of probation of twelve years to run consecutive to Count One. The court discussed with Taylor the two options, and Taylor responded affirmatively that he wished to avail himself of the option pursuant to which the district attorney would recommend a fifteen year sentence. (*Id.*, p. 11) However, Judge Di Motto had made it clear that he was not bound by "any negotiation or anything recommended" by the district attorney, defense counsel or anyone who provides the court with information at sentencing. (Respondent's Answer, Ex. S, p. 14)

Taylor's claims in support of his habeas petition are in direct contradiction to his representations at the plea hearing and sentencing as well as the statements of Judge Di Motto. As noted by his counsel at sentencing, Taylor is well-educated. Taylor's wife testified that he was a pre-med student when they met. (Ex. T, p. 60) Judge DiMotto referenced Taylor's GED, studies at MATC and pursuit of a higher degree at Concordia College. (*Id.*, p. 89) Further, there is no evidence in the transcripts that the plea was not knowing or voluntary, and nothing else in the record that would corroborate such assertion. Thus, any ineffective assistance of counsel claim based on these contentions necessarily fails. Taylor knew the possibility of two consecutive sentences with a maximum term of eighty years. Moreover, Taylor did not simply respond "yes" to all of the questions. On these facts and in the absence of any other evidence proffered by Taylor, the court cannot find that the application of *Strickland* was unreasonable.

5

Next, Taylor complains of judicial bias because the victim's grandparents worked in the courthouse, and that his concerns were ignored by the judge and counsel. Similarly, Taylor contends that the status of the victim's family created a conflict of interest, which he voiced to defense counsel and that conflict was ignored. Apparently, the victim's grandfather is a Milwaukee County Deputy Sheriff (Court Bailiff) and appeared in uniform at the bond hearing. Taylor suggests the court did not take notice because the case was scheduled for another court, but the new judge was informed about the "status of the victim's grandparents." Nevertheless, Taylor admits that defense counsel addressed the status of the grandparents and the concern for special treatment.

On direct appeal, Taylor argued that the court imposed an excessive sentence placing undue weight upon the effects of the assault on the victim's family. (Respondent's Answer, Ex. B, pp. 5-11) Taylor cited testimony that the grandfather was a bailiff and unable to come into the courtroom because he was so personally distressed. (*Id.*, p. 7) Additionally, Taylor noted that the grandmother's testimony suggested that she was a direct victim of Taylor's offenses. (*Id.*, p. 8) Taylor referenced Judge DiMotto's comments at sentencing that the pain stemming from his crime was particularly difficult for the grandparents, who both had careers in the criminal justice system - "with the grandfather as a court bailiff, and the grandmother as a probation and parole officer." (*Id.*, p. 9)

Nevertheless, the Wisconsin Court of Appeals held that under the circumstances the trial court properly applied the sentencing factors and that it was not excessive, unusual, or disproportionate to the offense committed as to be shocking to the public sentiment, or the judgment of reasonable people. Later, on appeal from his post-conviction motion, the Wisconsin Court of Appeals held that Taylor's attempts to tie the lengthy sentence to the

6

victim's grandparents' employment status was another attempt to "re-argue" his sentence. Although the Court of Appeals found that the claim was procedurally barred, it also found that there was no credible evidence that the trial court was biased against him because of the victim's grandparents.

As the Supreme Court has observed, "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955). Having carefully reviewed the record, the court is satisfied that the requirements of due process were met. That the grandparents of the victim were employed by the criminal justice system does not "make a fair judgment impossible." Also, it is notable that Judge DiMotto referred to the tragedy as it affected the victim and her family, but acknowledged that Taylor's crime was "tragedy for everyone involved" including everyone connected to Taylor. Further, Judge DiMotto acknowledged that a sentence affects everyone including the victim's *and* defendant's families. He then proceeded to address each of the primary factors that may be considered at sentencing. As recognized by the Court of Appeals:

> [a]lthough the victim's family and friends were allowed to testify at the sentencing hearing about the pain and suffering the assault caused them and the victim, the trial court made it perfectly clear on the record that Taylor's sentence was based on his crimes and their effects on the victim and society, not on vengeance or revenge.

(Ex. E, p. 3)

Ultimately, the sentence imposed was justified because Judge DiMotto believed there needed to be "some truth in sentencing." Based on his belief that the minimum amount of time that Taylor must serve in prison is fifteen years, Judge DiMotto felt that a sixty-year

7

Case 2:03-cv-01420-CNC   Filed 12/29/07   Page 7 of 11   Document 24

sentence would ensure truth in sentencing. Put simply, relief is not warranted on the underlying claim of bias or any related claim of ineffective assistance of counsel.

Taylor next asserts that the prosecutor violated the plea agreement by recommending that the defendant receive fifteen years pursuant to the plea bargain while acknowledging that he understood the family wanted a harsher sentence. According to Taylor, the District Attorney cast a "dark cloud" over the court and the court adopted the district attorney's reasoning when imposing a sentence of sixty years.

Taylor did not argue breach of a plea agreement on direct appeal. Nonetheless, on review of the order denying the post-conviction motion, the Wisconsin Court of Appeals concluded that the prosecutor had not breached the plea agreement:

> It is clear from the context of the sentencing hearing that what the prosecutor was conveying to the court was the victim's family's feeling that the maximum sentence was appropriate. As the State points out, the prosecutor goes on to explain to the court that maximum sentences are reserved for the worst offenders and that Taylor does not fall into that category. He advised the court that he felt a fifteen-year sentence was fair for Taylor and recited the remainder of the plea agreement.
>
> We disagree with Taylor that the prosecutor's statements constituted a material and substantial breach. The prosecutor clearly complied with the agreement by recommending the terms to which Taylor agreed. When the prosecutor was conveying the victim's family's feeling's to the court, that information was separate and distinct from the prosecutor's recommendation, and although the prosecutor certainly could have left his personal comment regarding his daughter out of the explanation, this was at worst a technical breach.

(Respondent's answer, Ex. M, p. 6)

Generally, plea agreements are contracts that must be fulfilled. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). A state's promise

8

need not be explicit, but "more than an 'unfounded and unilateral belief' is required to support the defendant's assertion that the government made a particular promise." *United States v. Williams*, 198 F.3d 988, 992 (7th Cir. 1999) (quoting *United States v. O'Brien*, 853 F.2d 522, 526 (7th Cir.1988)). Further, the breach must be material or substantial, not merely technical. *State v. Naydihor*, 270 Wis. 2d 585, 678 N.W.2d 220, 225 (2004) ("An actionable breach must not be merely a technical breach; it must be a material and substantial breach.") (quoting *State v. Williams*, 249 Wis. 2d 492, 637 N.W.2d 733, 744 (2002)).

The Wisconsin Court of Appeals found that any breach was technical. This conclusion, that any breach was technical rather than material and substantial, was not unreasonable. During the sentencing, the district attorney argued as follows:

> Mr. Kohn [defense counsel] has always been aware that the victim's family is asking for eighty years, and the maximum is appropriate, and those sentiments are echoed in the letters that are sent on behalf of Mr. Taylor, and I have to be honest, if this were my daughter, I couldn't be doing what I do, and I would be saying the same thing.
>
> But the Supreme Court says the maximum sentences are reserved for the worse offenders. While this crime is a horrific offense, I don't believe Mr. Taylor falls in the worse offenders' category. He needs prison, and that's why I'm recommending fifteen years. He needs to be supervised. He needs to be supervised until he's an old man, and that's why I feel the imposed and stayed prison sentence and the consecutive probation is appropriate.
>
> You know, as I indicated, going through the family background and going through the personal history, there is nothing in Mr. Taylor's history to which a person could look into their crystal ball and see that this would happen. This is an aberration, and it is a horrible aberration, and it's in a sense a tragedy for everyone.
> The agent's impressions, I don't need to comment on those. The court will have the opportunity to listen to everything. The agent's recommendation is similar to what the State's recommending.

> The agent requests Wisconsin State Prison for a lengthy period of time as indicated.
>
> I came to the conclusion that what was fair was fifteen years. As to Count 2, the agent is recommending to the State a lengthy period, that the sentence be imposed and stayed to run consecutive to Count 1 as indicated.
>
> In my view of what's fair, I came to the conclusion that would be imposed and stayed, twenty-five years stayed, and probation for twelve years to run consecutive to the recommended prison in Count 1, and under the circumstances that what I'm indicating.

(Respondent's Answer, Ex. T, p. 23) In context, the district attorney's arguments were not a substantial and material breach. Indeed, as argued by defense counsel, "everybody in the courtroom would agree, were this my daughter I would probably be asking for the same, but that doesn't mean, given the system that we have, that is an appropriate sentence." (*Id.,* p. 33)

Finally, Taylor maintains that appellate counsel was ineffective in failing to raise all of the claims cited above, including conflict of interest, judicial bias, invalid plea agreement, and the violation of the plea agreement. Then Taylor "clarifies" that he is asserting eight grounds of ineffective assistance of counsel:

> 1) Promises by counsel; 2) Ineffective for not withdrawing the plea agreement; 3) Failure to investigate; 4) Unsing [sic] duress to get Plea Agreement; 5) Misunderstanding of the facts; 6) Misrepresenting the Facts, 7) Coercing the defendant to Plea "Guilty" because of the "Status" of the victim's family; 8) Misleading the defendant on the Evidence.

Ineffective assistance of trial and appellate counsel were the reasons cited by Taylor for failing to raise these issues on direct appeal. The Wisconsin Court of Appeals rejected these

claims in applying *Strickland*. Finding the application of *Strickland* reasonable and no merit in Taylor's claims,

        IT IS ORDERED that the pending petition for a writ of habeas corpus is denied.

        IT IS FURTHER ORDERED that this case is dismissed with prejudice.

        Dated at Milwaukee, Wisconsin, this 29th day of December, 2007.

                BY THE COURT

                s/ C. N. CLEVERT, JR.
                C. N. CLEVERT, JR.
                U. S. DISTRICT JUDGE

11

Case 2:03-cv-01420-CNC   Filed 12/29/07   Page 11 of 11   Document 24